**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR-BY-MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, 2005-PWR9,** | § § § § § § § § § § § § § | |
| | § | |
| *PLAINTIFF*, | § | Civil Action No. _____ |
| | § | |
| **v.** | § | |
| | § | |
| **GRAYSON HOSPITALITY, INC., TEXOMA HOSPITALITY, INC., ATOKA HOSPITALITY INC., KRN ENTERPRISES, INC., MCALESTER HOSPITALITY, INC., AND NORMAN HOSPITALITY, INC.** | § § § § § § § | |
| | § | |
| *DEFENDANTS.* | § | |
| | § | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT FOR APPOINTMENT OF**
**TEMPORARY RECEIVER AND REQUEST FOR EXPEDITED CONSIDERATION**

U.S. Bank National Association, successor-in-interest to Bank of America, National Association, successor-by-merger to LaSalle Bank National Association, as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, 2005-PWR9 ("**Plaintiff**"), acting by and through Special Servicer (defined below), files this complaint against Defendants Grayson Hospitality, Inc., a Texas corporation, Texoma Hospitality, Inc., a Texas corporation, Atoka Hospitality Inc., an Oklahoma

corporation, KRN Enterprises, Inc., an Oklahoma corporation, McAlester Hospitality, Inc., an Oklahoma corporation, and Norman Hospitality, Inc., an Oklahoma corporation (individually or collectively, as the context may require, **"Borrowers"**), seeking, among other things, **expedited consideration** of its application for appointment of a temporary receiver for the real property described below, and respectfully shows as follows:[1]

## I.    INTRODUCTION AND REASONS FOR EXPEDITED CONSIDERATION

1.    Plaintiff seeks the **expedited** appointment of a temporary receiver over six (6) hotels located in Texas and Oklahoma (the "**Properties**").[2]  The Properties are Plaintiff's primary collateral for repayment of six (6) commercial real estate loans held by Plaintiff in the aggregate original principal amount of $28,000,000.00.  All six (6) loans are cross-defaulted and cross-collateralized, such that "each of the Security Instruments shall constitute security for each of the Notes *as if a single blanket lien* in an aggregate amount of $28,000,000.00 were placed on all of the [Properties] as security for the Notes."[3]

2.    The Court should appoint a receiver for the Properties on an **expedited basis** because Borrowers' gross and/or willful mismanagement of the Properties is causing immediate substantial and potentially irreparable harm to the value of the Properties.[4]    For example, Borrowers have failed to fulfill one of the most critical duties of a hotel owner/operator – to

---

[1] Capitalized terms not immediately defined are defined below.

[2] Properties includes the six (6) real properties comprising the hotels, including the personal property and general intangibles referenced and described in each of the Security Instruments.

[3] *See* Section 4.34 of the Mortgages and Section 5.34 of the Deeds of Trust, true and correct copies of which (one for each Property) are attached hereto as Exhibit 1.  (Emphasis added).

[4] As explained below, each of the Properties is managed by Premier Hospitality Management, Inc. ("**Premier**"), which is closely affiliated with the Borrowers.  Rajendra and Mina Patel, who are, respectively, President and Director of each Borrower, are also President and Vice President, respectively, of Premier.  Premier manages 17 hotels in Texas and Oklahoma, all of which are owned by single-asset entities that are controlled by the Patels.  Consequently, Premier's mismanagement of the Properties constitutes mismanagement by Borrowers and the Patels.

"maintain the flag."  Due to Borrowers' flagrant mismanagement (including repeated failure to perform standard maintenance repairs, some of which jeopardize the health and safety of the guests, visitors, and vendors), the franchisors of two (2) of the Properties recently terminated the associated Franchise Agreements, which had (before termination) authorized the applicable Borrower's use of the franchisor's hotel "flag."

3.      The franchise terminations have caused (and will continue to cause) tremendous damage to the value of the Properties.  For example, the de-flagged Properties have been dropped from the franchisors' nationwide reservation systems and are prohibited from using brand names and logos.  And Borrowers have failed to secure new flags for either of the two (2) de-flagged Properties in the now over seven (7) months since termination.

4.      Further, Borrowers have failed to maintain the Properties in accordance with the Loan Documents and have committed waste on the Properties to such an extent that it will cost *over $6.3 million to renovate just one of the Properties*.  Consequently, a temporary receiver is urgently needed to take control of and operate the Properties to prevent the further deterioration and diminution in value of Plaintiff's collateral.

5.      Moreover, according to the Borrowers, Franchise Agreements for the four (4) currently "flagged" hotels in the portfolio will soon expire, and respective franchisors are demanding millions of dollars in additional capital improvement to retain their respective flags. Borrowers have not made these imminently-required improvements, putting these flags in serious jeopardy of being lost (and never reinstated by Borrowers) like their portfolio counterparts.

6.     Finally, the Court should appoint a temporary receiver for the Properties because Borrowers expressly agreed to appointment of a receiver in the Security Instruments upon an Event of Default.  It is undisputed that Borrowers have committed several Events of Default by allowing the termination of the Franchise Agreements for two (2) of the Properties. Accordingly, the Court should enforce the parties' agreement and appoint a temporary receiver for the Properties on an expedited basis to stem the ongoing deterioration of Plaintiff's collateral and source of repayment for the cross-defaulted and cross-collateralized loans.

## II.     PARTIES

### A.     PLAINTIFF

7.     Plaintiff is a REMIC trust for which U.S. Bank National Association ("**U.S. Bank**") is the successor trustee and real party-in-interest.  U.S. Bank is a national banking association with its main office in Cincinnati, Ohio.  For diversity purposes, a national bank is a citizen of the state in which the bank's main office, as set forth in its articles of association, is located.  *See Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 318-19 (2006); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 & n.6 (5th Cir. 2009) (holding that the citizenship of a trust is that of its trustee); *Hosey v. Network Funding, LP*, No. H–13–2573, 2013 WL 5971061, at *2 (S.D. Tex. Nov. 8, 2013) (holding that citizenship of a REMC trust is determined solely by its trustee).  Therefore, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Ohio.  For all purposes of the action described in this Complaint, Plaintiff is acting by and through Special Servicer.[5]  Plaintiff may be served with any pleading in this matter through its undersigned counsel of record.

---

[5]  "**Special Servicer**" means C-III Asset Management LLC (successor to GMAC Commercial Mortgage Corporation), a Delaware limited liability company, not individually but solely in its authorized capacity as special servicer pursuant to that certain Pooling and Servicing Agreement, dated September 1, 2005.

**B.    DEFENDANT**

8.    Each  Borrower  is  a  corporation.    For  diversity  purposes,  the  citizenship  of  a corporation  is  determined  by  the  state  of  incorporation  and  the  location  of  its  principal  place  of business.

    d.    There are six (6) Borrowers:

        i.    Grayson Hospitality, Inc., is a Texas corporation that maintains its principal place of business in Oklahoma;

        ii.    Texoma Hospitality, Inc., is a Texas corporation that maintains its principal place of business in Oklahoma;

        iii.    Atoka Hospitality Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma;

        iv.    KRN Enterprises, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma;

        v.    McAlester Hospitality, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma; and

        vi.    Norman Hospitality, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma.

    e.    Consequently,  Borrowers  are  citizens  of  Texas  and  Oklahoma  for purposes of diversity jurisdiction.  The Texas-incorporated Borrowers are collectively referred to herein  as  the  "**Texas  Borrowers**"  and  the  Oklahoma-incorporated  Borrowers  are  collectively referred to herein as the "**Oklahoma Borrowers**."

    f.    Grayson  Hospitality,  Inc.  and  Texoma  Hospitality,  Inc.  may  be  served with summons and a copy of this Complaint through their registered agent in Texas, Rajendra K. Patel, 2900 U.S. Highway 75 N, Sherman, Texas  75090.

    g.    Atoka Hospitality Inc., KRN Enterprises, Inc., McAlester Hospitality, Inc., and  Norman  Hospitality,  Inc.  may  be  served  with  summons  and  a  copy  of  this  Complaint

through their registered agent in Oklahoma, Rajendra K. Patel, 118 N. 7th Street, Durant, Oklahoma 74701.

### III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because, as noted above, complete diversity of citizenship exists between Plaintiff, on the one hand, and Borrowers, on the other hand, and because the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

10.    Each Borrower is subject to personal jurisdiction in Texas.  The Texas Borrowers are subject to personal jurisdiction in Texas because they are Texas companies who transact business in Texas and are indebted to Plaintiff under cross-defaulted and cross-collateralized loans secured by the Texas Properties (and the Oklahoma Properties).  The Oklahoma Borrowers likewise transact business in Texas because, among other reasons, they are likewise indebted to Plaintiff under cross-defaulted and cross-collateralized loans secured by the Texas Properties (and the Oklahoma Properties).  Further, all six (6) Borrowers (including the Oklahoma Borrowers, acting directly or through Premier) regularly direct communications regarding the Loans and the Properties to Texas when dealing with Special Servicer, who services the defaulted Loans from Texas (at the direction of Plaintiff).

11.    Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District; and (ii) a substantial part of the Property is situated in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    THE LOAN OBLIGATIONS AND COLLATERAL**

**(i)    Promissory Note**

12.    Borrowers are indebted to Plaintiff pursuant to six (6) certain Promissory Notes (collectively, the "**Notes**"),[6] each dated July 29, 2005, each executed by a separate Borrower, as maker, payable to the order of Prudential Mortgage Capital Company, LLC, a Delaware limited liability company ("**Original Noteholder**"), as payee, in the original principal amounts for each Note as described in **Table 1** below. The six (6) cross-defaulted, cross-collateralized loans evidenced by the Notes are referred to herein either individually or collectively as the "**Loans**."

**(ii)    Properties**

13.    The proceeds of the funds advanced pursuant to the Notes were used in connection with the six (6) hotel Properties, two (2) of which are located in Texas (the "**Texas Properties**") and four (4) of which are located in Oklahoma (the "**Oklahoma Properties**"), as listed in **Table 1** below:

**Table 1 ( Borrowers, Note Amounts, and Properties):**

|     | Borrowers | Note Amount | Property Name | Property Address | Property County |
| --- | --- | --- | --- | --- | --- |
| 1. | Grayson Hospitality, Inc. | $2,500,000 | Grayson-Sherman Property (Comfort Inn) | 2900 US Highway 75N, Sherman, Texas | Grayson County, TX |
| 2. | Texoma Hospitality, Inc. | $3,400,000 | Texoma-Sherman Property (Hampton Inn) | 2904 Michelle Drive, Sherman, Texas | Grayson County, TX |
| 3. | Atoka Hospitality Inc. | $2,300,000 | Atoka Property (Former Best Western) | 2101 S. Mississippi, Atoka, Oklahoma | Atoka County, OK |
| 4. | KRN Enterprises, Inc. | $4,600,000 | KRN-Durant Property (Comfort Suites) | 2112 W. Main Street, Durant, Oklahoma | Bryan County, OK |
| 5. | McAlester Hospitality, Inc. | $6,200,000 | McAlester Property (Comfort Inn) | 650 George Nigh Expy, McAlester, Oklahoma | Pittsburg County, OK |
| 6. | Norman Hospitality, Inc. | $9,000,000 | Norman Property (Former Holiday Inn) | 1000 N. Interstate Drive, Norman Oklahoma | Cleveland County, OK |
|     | **Total** | **$28,000,000** | | | |

**(iii)    Security Instruments**

14.    The Loans are evidenced and secured by, among other things, the liens, security interests, terms and provisions contained within four (4) separate mortgages for the Oklahoma

---

[6]  True and correct copies of the Notes and related allonges thereto are attached hereto as Exhibit 2.

Properties (the "**Mortgages**") and two (2) separate deeds of trust for the Texas Properties (the "**Deeds of Trust**") (the Mortgages and Deeds of Trust are collectively referred to herein as the "**Security Instruments**"), each executed by one of the Borrowers for the benefit of Original Noteholder, and encumbering each of the six (6) separate Properties, respectively.

### (iv)    Loan Documents

15.    The Notes, the Security Instruments, and any and all other documents executed in connection therewith, or relating in any way thereto, are referred to, individually or collectively, as the context may require, as the **"Loan Documents**."

### (v)    Cross-Default and Cross-Collateralization

16.    Each individual Loan is cross-defaulted and cross-collateralized with all of the Loans, such that (i) a default under any particular Loan is a simultaneous default under the other Loans; and (ii) Property that secures repayment of a particular Loan simultaneously secures repayment of all of the other Loans.  The cross-default and cross-collateralization provisions are consistent with Plaintiff's reliance on the combined value of the Properties in the aggregate being greater than the value of the sum of the individual Properties.  Section 4.34 of the Mortgages and Section 5.34 of the Deeds of Trust, which are identical, provide as follows:

> "[Borrower] acknowledges that [Plaintiff] has made the Aggregate Loan to the [Borrowers] that are a party to each of the Security Instruments upon the security of their collective interest in the [Properties] and in reliance upon the aggregate of the [Properties] taken together being of greater value as collateral security than would be the case if the loans evidenced by each of the Notes were allocated among the [Properties] and recovery as against the Property and each of the Other Properties were limited to the amount so allocated. [Borrower] agrees that the Aggregate Debt is and will be cross-collateralized and cross-defaulted with each other so that (i) an event of default under any of the Aggregate Loan Documents shall constitute an Event of Default under this [Mortgage / Deed of Trust] and the Note; (ii) an Event of Default under this [Mortgage / Deed of Trust] or the Note shall constitute an event of default under the other Aggregate Loan Documents; and ***(iii) each of the Security Instruments shall constitute security for each of the Notes as if a single blanket lien in the aggregate amount of $28,000,000.00 were placed on all of the Aggregate Property as security for the Notes.***"

(Emphasis added).

### (vi)    **Assignment to Plaintiff of the Loan Documents**

17.    Pursuant to one (1) or more endorsements, assignments and/or transfers of the Loan Documents, Plaintiff is the current owner of the Loan Documents.[7]

### (vii)    **Indebtedness**

18.    For purposes of this Complaint, all of the amounts owed by Borrowers to Plaintiff under the Loan Documents, including without limitation any late fees, default interest, and costs and expenses incurred by Plaintiff in connection with the enforcement of the Security Instruments, including court costs and attorneys' fees, are collectively referred to herein as the "**Indebtedness**."

## B.    BORROWERS' BREACHES OF THE LOAN DOCUMENTS

### (i)    **Termination of Two (2) Hotel Franchise Agreements**

19.    Section 1.30(b) of each Mortgage provides that in no event shall the Franchise Agreement[8] be terminated without the prior written consent of Plaintiff, and that the applicable Borrower shall comply with all of its duties and obligations under the Franchise Agreement. Section 2.2 of each Mortgage provides that the termination of the Franchise Agreement, that is not replaced with another Franchise Agreement acceptable to Plaintiff, shall, in Plaintiff's sole discretion, constitute an Event of Default under the Mortgage.

---

[7]  True and correct copies of the chain of assignments of the Security Instruments from Original Noteholder to Plaintiff are attached hereto as Exhibit 3.

[8]  "**Franchise Agreement**", as defined in Section 1.1(rr) of each Mortgage, means the franchise agreement pursuant to which the applicable Borrowers has the right to operate the hotel located on its Property under a name and/or

### *Termination of Franchise for the Norman Property*

20.     The Holiday Inn franchisor of the Norman Property terminated the franchise for that hotel effective February 3, 2014, stating that Norman Hospitality, Inc. ("**Norman Borrower**") failed to "achieve minimum quality and service scoring requirements" under the governing Franchise Agreement.[9]   Termination of the Norman Borrower's franchise is referred to herein as the "**Norman Termination Default.**"

21.     Inexplicably, and in violation of the Loan Documents, the Norman Borrower failed to notify Plaintiff of the Norman Termination Default until May 5, 2014.  Plaintiff requested that the Norman Borrower provide Plaintiff with its plan to re-establish its Franchise Agreement by June 5, 2014, and that failure to do so would constitute an Event of Default under Section 2.2 of the Mortgage.  The Norman Borrower did not do so.  Accordingly, on July 30, 2014, Plaintiff sent to the Norman Borrowers (with a copy to all other Borrowers) a Notice of Event of Default and Intent to Accelerate (the "**July 30 Default Letter**"),[10] notifying the Norman Borrower that an Event of Default had occurred under Section 2.2 of the Mortgage, and providing additional time (until August 8, 2014) for the Norman Borrower to resolve the Norman Termination Default, failing which Plaintiff would accelerate the maturity dates in all of the Notes.  The Norman  Borrower failed to cure the Norman Termination Default, and therefore, Plaintiff sent to the Borrowers on August 21, 2014 an Acceleration Letter (the "**August 21 Acceleration Letter**")[11] notifying the Borrowers that the maturity dates of all of the Loans had been accelerated, making immediately due and payable all (a) unpaid principal due under the

---

hotel system controlled by the applicable franchisor.

[9] A true and correct copy of the January 28, 2014 letter referencing the Norman Termination Default is attached hereto as <u>Exhibit 4</u>.

[10]  A true and correct copy of the July 30 Default Letter is attached hereto as <u>Exhibit 5-A.</u>

[11]  A true and correct copy of the August 21 Acceleration Letter is attached hereto as <u>Exhibit 6-A.</u>

Notes; (b) accrued interest due under the Notes; and (c) other amounts due under the Loan Documents.

### *Termination of Franchise for the Atoka Property*

22.    On August 6, 2014, the Plaintiff obtained a letter dated July 10, 2014 (the "**July 10 Letter**") sent to Atoka Hospitality Inc. ("**Atoka Borrower**") by the franchisor Best Western International, Inc., indicating that the franchisor was considering terminating the Franchise Agreement for the Atoka Property, and that a hearing on the issue was scheduled for July 22, 2014.[12]   Borrowers did not notify Plaintiff of the hearing results until August 19, 2014, when Premier sent Plaintiff a letter dated July 30, 2014, from Best Western to Premier, whereby the Best Western franchisor reported as follows:

> After full and complete consideration of the information provided, it was the decision to cancel all aspects of the property's membership effective immediately because on the July 2, 2014, Quality Assurance Assessment report, the property received a single "RESTRICTED" Overall Guest Room and Public Area Status score of 429 points.
>
> We have deleted the property's listing from our reservation system and cancelled your participation in Best Western's master credit card agreements, You must take appropriate steps to discontinue all use of the Best Western name and logo at your property effective immediately.[13]

23.    Accordingly, the Atoka Termination Default constitutes a separate Event of Default under Section 2.2 of the Mortgage for the Atoka Property.

### (ii)    **Waste, Impairment of Property Value, Failure to Maintain the Properties**

24.    Section 1.16 of each Security Instrument provides that Borrowers shall not commit, suffer or permit any waste on the Properties, and that Borrowers shall maintain the

---

[12]  True and correct copies of the July 10 Letter and the email correspondence with the franchisor are attached hereto as Exhibit 7.

[13]  True and correct copies of the July 30 Best Western Letter and the email correspondence with Premier are attached hereto as Exhibit 8.

Properties in good condition and repair.  In addition, Section 2.1(m) of each of the Security Instruments provides that an Event of Default shall occur if the Properties, or any part thereof, is subjected to actual or threatened waste so that the value of the Properties is materially diminished thereby, and Plaintiff determines (in its subjective determination) that it is not adequately protected from any loss, damage or risk associated therewith.

25.     The failing grade (429 out of 1,000) on Best Western's Quality Assurance Assessment, dated July 8, 2014 (the "**QA Assessment**") establishes that the Atoka Property is in poor physical condition, with significant deferred maintenance issues.  The QA Assessment details the Atoka Borrower's failure to perform basic repairs and upkeep, such as:

- broken deadbolt locks;

- damaged walls and doors;

- dirty and stained linens;

- bugs in the rooms;

-  broken overhead and exit lights;

- deterioration of parking lots and curbs;

- substantially worn signage;

- burn marks in blankets, comforters, and lounge chairs; and

- missing/broken appliances.[14]

26.     The Norman Property is also in very bad shape: Focus Management Group, a Norman-based contractor, recently estimated (at Borrowers' behest) it would cost $6.3 million to fix Property disrepair related just to the Norman Property losing its flag.[15]

27.     Accordingly, Borrowers' commission of waste and failure to address deferred

---

[14]  A true and correct copy of the QA Assessment is attached hereto as Exhibit 9.

maintenance at the Atoka Property and the Norman Property (and potentially all of the Properties) is an Event of Default under Section 2.1(m) of the Security Instruments.

28.     Based on the Borrowers' repeatedly demonstrated failure to (a) properly maintain the Atoka and Norman Properties; and (b) notify Plaintiff of problems at the Properties, including threats to terminate *and actual termination of* Franchise Agreements, Plaintiff believes that similar waste and deferred maintenance issues exist at the remaining Properties, or will soon exist unless a temporary receiver is appointed.

      **(iii)**    **Cross Defaults**

29.     Pursuant to Section 4.34 of the Mortgages and Section 5.34 of the Deeds of Trust, which are substantively identical, an Event of Default under any other Security Instrument constitutes an Event of Default under such Security Instrument.  Accordingly, each and all of the Events of Default described above with respect to the Norman Property and Atoka Property constitute Events of Default with respect to all of the other Properties under the respective Loan Documents.

## V.      APPLICATION FOR EXPEDITED APPOINTMENT OF TEMPORARY RECEIVER

30.     Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

31.     Pursuant to Rule 66 of the Federal Rules of Civil Procedure, "the appointment of a receiver may be sought by anyone showing an interest in certain property or in relation to the party in control or ownership thereof such to justify conservation of the property by a court officer."  *Santibanez v. McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (internal citations omitted).  Upon the appointment of a receiver for property, real, personal, or mixed, the

---

[15] A true and correct copy of the Focus Management Group estimate is attached hereto as <u>Exhibit 10.</u>

territorial jurisdiction of the Court shall extend to any judicial district in which receivership property is found.  *See* 28 U.S.C. § 1692.

32.    Furthermore, this Court may appoint a Receiver for the Oklahoma Properties and the Texas Properties pursuant to 28 U.S.C. § 754, which expressly authorizes a district court to appoint a receiver for property outside the court's district.[16]

33.    Plaintiff is entitled to appointment of a receiver on both equitable and contractual grounds, as shown herein.

A.    EQUITABLE GROUNDS FOR APPOINTMENT OF RECEIVER

34.    This Court should appoint a receiver because the equitable factors for appointment weigh heavily in Plaintiff's favor. *See Santibanez*, 105 F.3d 234, 241-42 (holding that receiver is warranted on equitable grounds where there exists imminent danger that property will be concealed, lost, or diminished in value).  *First*, due to the termination of the Franchise Agreements for the Norman Property and the Atoka Property, the franchisors (Holiday Inn and Best Western, respectively) have dropped those Properties from their reservation systems and have required immediate removal of and forbidden future use of all brand logos, including external signage, causing tremendous financial damage to these Properties, including likely future loss of hotel occupancy.  *Second*, Borrowers have refused to properly maintain and have committed waste on the Properties, permitting deteriorating conditions jeopardizing the health

---

[16] 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in a different district shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof."); *see also Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010) (holding that the U.S. District Court for Eastern District of Texas was authorized under 28 U.S.C. § 754 to appoint a receiver for property in Florida); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1529 (D.C. Cir. 1984), *vacated on other grounds*, 471 U.S. 1113 (1985) ("Courts often property issue equitable decrees involving property outside the jurisdiction of the court.  Where, as here, the court adjudicating the controversy has personal jurisdiction over the [parties], the extraterritorial nature of the property involved in the litigation is no bar to equitable relief.").

and safety of guests, visitors, and vendors of the Properties. *Third*, Borrowers refuse to contribute necessary capital to fix these egregious conditions and reclaim lost franchise flags. Because the Properties serve as the primary collateral for repayment of all of the Loans, the consequences of Borrowers' mismanagement require that a receiver be appointed for all of the Properties.

35.    Legal remedies other than appointment of a receiver will not suffice to protect Plaintiff's interests in the Properties, and no less drastic equitable remedies exist. *See Russ-Ann Development, Inc. v. ECGC, Inc.*, 322 S.W.3d 921, 927 (Tex. App. – Tyler 2007, no pet.) ("In Texas, the potential loss of rights in real property is a probable, imminent, and irreparable injury that qualifies a party for a temporary injunction.").

36.    The urgent issues described above cannot be solved with money damages alone or any other equitable remedy. The poor condition of the Properties as collateral for the Loans, and the avoidance by Plaintiff of mortgagee-in-possession liability issues, mandate that a suitable receiver be appointed that is independent of Borrowers to operate and manage the Properties in a professional manner, to oversee and address the significant repairs at the Properties, and to seek to resolve any issues with the hotel franchisors under the Franchise Agreements.

37.    Borrowers will not suffer harm if this Court appoints a receiver. *First*, Borrowers have already agreed to the appointment of a receiver for the Properties in the Loan Documents. *Second*, the appointment of a receiver for the Properties will merely remove some of Borrowers' responsibilities and authority, and allow Plaintiff to utilize, if necessary and in Plaintiff's sole discretion, revenues from the Properties to address the significant deferred maintenance that exists at the Properties without becoming exposed to mortgagee-in-possession liability issues. *Third*, the lack of a receiver for all of the Properties will deny Plaintiff the right to realize the

protection and benefits of the cross-collateralization provisions approved and consented to by Borrowers. *Fourth*, since each of the Properties serves as collateral for repayment of each of the Loans, a common receiver for all Properties will avoid unnecessary and duplicative expenses for each Property, which will serve judicial economy. Ultimately, the harm suffered by Plaintiff by not appointing a receiver clearly outweighs any harm to Borrowers from appointment of such receiver.

38.     Finally, Plaintiff will likely succeed in the underlying action for breach of contract, as it is undisputed that Events of Default have occurred due to the Norman Termination Default and the Atoka Termination Default.

**B.     CONTRACTUAL GROUND FOR APPOINTMENT OF A TEMPORARY RECEIVER**

39.     In addition, the Court should appoint a temporary receiver for all of the Properties because the Borrowers expressly agreed and consented to such appointment in the Loan Documents. Under Section 3.1(d) of each Security Instrument, upon an Event of Default, Plaintiff may "***make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right*** and without notice to [Borrower] and without regard to the adequacy of the Property for the repayment of the Debt or the solvency of [Borrower] or any person or persons liable for the payment of the Debt, ***and [Borrower] does hereby irrevocably consent to such appointment, waives any and all notices of and defenses to such appointment and agrees not to oppose any application therefor by [Plaintiff]***." (emphasis added).

40.     In addition, under Section 3.1(g) of each of the Security Instruments (and the cross-default/cross-collateralization provisions in Section 4.34 of the Mortgages and Section 5.34 of the Deeds of Trust), upon an Event of Default under any one Security Instrument, Plaintiff

may exercise its rights and remedies under the combined Loan Documents with respect to any or all of the Properties.

41.     Borrowers' clear and unambiguous agreement to appointment of a receiver is enforceable under Texas law, which governs interpretation of the Deed of Trust, and under Oklahoma law, which governs interpretation of the Mortgages.[17]  Even if consent to appointment of a receiver is not dispositive, it is still a factor that weighs heavily in favor of appointing a receiver.[18]

42.     Borrowers have breached the Loan Documents and committed Events of Default under the Security Instruments by the occurrence of the Norman Termination Default, the Atoka Termination Default, and by committing waste at the Properties.  These breaches and Events of Default triggered Plaintiff's contractual right to appointment of a temporary receiver for all of the Properties pursuant to Section 3.1(g) of the Security Instruments.

## C.     THE PROPOSED RECEIVER

43.     The Court should appoint Hospitality Receiver, LLC, as receiver for the Properties.  Hospitality Receiver, LLC is not a party, attorney, or other person interested in this action, and is a widely-respected and experienced property manager and hotel operator that has

---

[17] *See* Deed of Trust at § 5.11 and Mortgage at § 4.11 (stating that the Security Instruments will be governed by and construed in accordance with the laws of the state in which the Property is located)*; see also Riverside Properties v. Teachers Ins. & Annuity Ass'n of America*, 590 S.W.2d 736, 738 (Tex. Civ. App. – Houston [14th Dist.] 1979, no writ) (holding that provisions in deed of trust and security agreements calling for appointment of a receiver pending foreclosure, while not binding on the court as a matter of Texas law, were adequate to support a trial court's order appointing receiver); *Fannie Mae v. U.S. Property Solutions, LLC*, Cause No. 08-3588, 2009 WL 1172711, *1 (S.D. Tex. April 28, 2009) (noting that court appointed receiver "[b]ecause the Note explicitly provided for the appointment of a receiver in the event of default…."); *Franchise Loan Trust 1998-1 v. S&A Fee Properties SPE 2, LLC*, Cause No. 08-306, 2008 WL 4093620, *1 (E.D. Tex. Aug. 26, 2008); *MF Realty LP v. Duncan Dev. Co.*, 892 P.2d 664, 667 (Okla. Civ. App. 1995) (holding that contractual provision for receiver appointment is enforceable under Oklahoma law if other conditions of the mortgage have not been performed)*; Minnesota Hotel Co. v. Rosa Dev. Co.*, 495 N.W.2d 888, 892 (Minn. Ct. App. 1993) ("The statutory [receivership] requirements need not be met when the parties contractually agree otherwise.").

[18] *See, e.g., New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (holding that consent by the parties to appointment of a receiver in a deed of trust is a factor that commands "great weight," but is

managed and operated over 65 hotels in Texas and Oklahoma and has been appointed receiver for hotels in over 55 matters nationwide, including at least 25 in Texas and Oklahoma.  Thus, Hospitality Receiver, LLC is ideally equipped to stop the imminent deterioration of the two (2) de-flagged Properties and preserve the value of all of the Properties as Plaintiff's collateral securing repayment of the Loan.

**D.    RECEIVER'S DUTIES AND POWERS**

44.    Plaintiff therefore respectfully prays for the following relief with respect to the appointment of a temporary receiver:

d.    That, pursuant to Rule 66 of the Federal Rules of Civil Procedure, Hospitality Receiver, LLC, whose address is 14800 Landmark Boulevard, Suite 800, Dallas, Texas  75254, (214) 257-1025, is appointed receiver ("**Receiver**") effective immediately with respect to each of the Properties and with respect to income of any kind therefrom, whether now existing or thereafter collected, and with respect to any and all other property and property interests granted, pledged and/or assigned under the Loan Documents, as defined in this Complaint.[19]

e.    That Receiver be authorized, subject to the control of this Court and the laws regarding receivership, to do any and all acts necessary to the proper and lawful conduct of the receivership; specifically, that the following acts and powers (collectively, the "**Receiver's Powers**") be authorized and ordered with respect to Receiver and with respect to each Property (and Plaintiff reserves the right to make future requests that the Court expand the Receiver's Powers should the same be deemed necessary):

i.    Receiver is authorized to take and have complete and exclusive

---

not dispositive).

[19]  Attached hereto as Exhibit 11 is a brief description of the qualifications of Hospitality Receiver, LLC to serve as Receiver for the Properties.

control and possession of the Properties, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents, along with any and all information necessary to operate the Properties as hotels and/or as associated with the ownership of the Properties, including, but not limited to, all security codes, combinations, passwords and other access codes, and all other collateral securing the indebtedness owed to Plaintiff pursuant to the Loan Documents;

ii.     Borrowers and all persons acting under their direction, including any agents of Borrowers (including any property manager), are ordered to deliver possession of the Properties to the Receiver, including all property-related information and YARDI files, without any right of offset or recoupment, along with all other collateral securing the indebtedness owed to Plaintiff pursuant to the Loan Documents, including, but not limited to:  (i) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrowers or their agents may have deposited with utility companies, and all other cash and cash equivalents); (ii) all keys and key cards; (iii) all loans and communications and correspondence files relating thereto; (iv) security deposits; rent; prepaid rent; other sums relating to the use, enjoyment, possession, improvement, or occupancy of all or any part of the Properties; and any accounts of any of the foregoing; (v) a current list of the guests of the Properties, including data with respect to each hotel guest; (vi) any and all accounts receivable and accounts payable reports; (vii) any and all contracts in effect with respect to the Properties and all communications and correspondence pertinent thereto; (viii) any and all contracts, bids, or other materials relating to any contractor work at the Properties; (ix) any and all payroll records, employee files, applications, and other materials relevant to those persons employed at the Properties; (x) any and all insurance policies and certificates covering the Properties, and all communications and correspondence pertinent thereto; (xi) any and all bank statements relating to any accounts associated with the Properties; (xii) any liquor licenses and related permits and approvals, with Receiver having the right to continue to operate under all existing licenses, including Oklahoma Alcohol Beverage Laws Enforcement Commission License No. 274404, issued to Norman Hospitality Inc. (Former Holiday Inn), and any other such liquor license and related permit and/or approval issued with respect to any of the Properties by the Oklahoma Alcohol Beverages Laws Enforcement Commission and/or the Texas Alcoholic Beverage Commission;

provided, however, that Receiver also has the obligation to comply after the date of the Order with all applicable Texas and Oklahoma regulations with respect to such licenses, including filing an application to succeed to the interest of Borrowers with respect to the above-referenced permits; (xiii) titles to all vehicles operated in connection with the Properties; (xiv) any and all communications from franchisors to any of the Borrowers regarding any issue relating to the use, management, or operation of the Properties; (xv) tax ID numbers for each of the Borrowers; and (xvi) any and all other records pertaining to the management and operation of the Properties;

iii.     Borrowers, their agents, and any persons acting under Borrowers' direction (including any property manager) are (i) directed to deliver the Properties to Receiver; (ii) enjoined from in any way disturbing the possession of the Properties or other property that is the subject of this Order; (iii) prohibited and restrained from disposing of, dissipating, mishandling, or misappropriating any of the Properties or other such property; (iv) prohibited from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Properties; (v) prohibited and restrained from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Properties; (vi) prohibited and restrained from collecting any rents, profits, or proceeds from the Properties, or other sums due to Borrowers or their agents, all until further order of the Court; and (vii) directed to disclose to the Receiver any personal property and/or any furniture, fixtures, and/or equipment that has been removed from the Properties within the ninety (90) days preceding entry of this Order;

iv.     Effective immediately, Receiver is ordered to take any and all actions Receiver deems reasonable and appropriate to prevent waste of the Properties and to preserve, secure, manage, maintain, and safeguard the Properties and all other forms of property to which Receiver is entitled to take possession and control under the Court's Order appointing Receiver;

v.     Receiver is vested with the books and records of Borrowers and their agents with respect to operation of the Properties and other property subject to this Order, including any and all information related to: (i) rent rolls and leases affecting the Properties; (ii) amounts paid by hotel guests, tenants, and other obligors of Borrowers; (iii) liens, encumbrances, and other interests against or affecting the Properties; (iv) property taxes owed by Borrowers or their agents, including the status of any tax appeal; (v) all types of insurance policies in effect with respect to the Properties; (vi) plans, specifications, surveys, and drawings of the Properties; (vii)

access codes to any of the Properties; (viii) all operating and bank statements of Borrowers or their agents; and (ix) all other aspects of the Properties;

vi.     Receiver is authorized to continue to manage and operate the Properties, to market and make the Properties available for hotel guests, and to employ such managers, agents, employees, servants, accountants, and attorneys as may in Receiver's judgment be advisable or necessary in the management, conduct, control, or custody of the affairs of Borrowers or their agents and their assets; is authorized to make (or not make, if the Receiver deems it justified) payments and disbursements in the ordinary course of business and to make such payments and disbursements as may be needed and proper for the preservation of the Properties and other property of Borrowers or their agents; and is directed to pay Net Income[20] from the Properties to Plaintiff, in reduction of the indebtedness owed to Plaintiff by Borrowers; specifically, Receiver is authorized to engage Prism Hospitality, L.P. ("**Prism**") as property manager to manage the day to day operations of all six (6) of the hotels and, if Receiver deems it to be in the best interest of the Properties, to employ the employees located on site at the hotel. Prism will be paid a monthly management fee per hotel equal to the greater of 2.5% of monthly total revenues or $4,000.00, plus a centralized monthly accounting fee of $1,000.00.

vii.    Receiver may negotiate with any and all persons concerning the leasing and/or occupancy of the Properties, including all personal property and/or collateral used in, or associated with, the ownership and operation of the Properties or any portion or portions thereof;

viii.   Receiver is authorized to receive and collect any and all sums due or owing to Borrowers in any manner related to the Properties, including any rents and revenues from the Properties, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, without regard to any cash management agreement between Plaintiff and the Borrowers, and to expend sums on the operation and management of the Properties, as is necessary and appropriate, in the ordinary course of its business;

ix.     Receiver is authorized to institute, prosecute, defend, compromise, and/or intervene in, or become a party to, such actions or

---

[20] "**Net Income**" means income after operating expenses and does not include debt service payments to Plaintiff due and owing under the Loan Documents.

proceedings in state or federal courts necessary for the protection, maintenance, and preservation of the Properties and to carry out the terms of this Order, including but not limited to, the removal of hotel guests or other persons from the Properties , and/or the defense against any action brought against Receiver acting in such capacity;

x.    Receiver is authorized to maintain appropriate property insurance for the Properties, public liability insurance, worker's compensation insurance, fire and extended coverage insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Properties; and is authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate;

xi.    Receiver is authorized to pay all current and past due real estate taxes, personal property taxes, and any other taxes and assessments against the Properties;

xii.    Receiver is authorized to prepare and file sales, beverage, and occupancy tax returns with respect to the Properties, as may be required by law; provided, however, Receiver is not responsible for the preparation of tax returns for Borrowers or any of their affiliates;

xiii.    Receiver and Plaintiff are authorized to enter into further lending transactions by which Plaintiff may, in Plaintiff's sole and absolute discretion, lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform its duties hereunder, which may be advanced pursuant to the applicable pooling and servicing agreement and the Loan Documents, and will be secured by the existing liens, security interests, terms, and provisions contained within the Loan Documents;

xiv.    Receiver is authorized to: (i) negotiate and enter into new leases, occupancy agreements, franchise and/or license agreements, and contracts in the ordinary course of the business of the Properties; (ii) modify existing leases, occupancy agreements, franchise and/or license agreements, and contracts in the ordinary course of the business of the Properties; (iii) pay all utilities, expenses, and other obligations secured by the Properties or which may give rise to liens on the Properties, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as Receiver has determined that it is prudent to do so in order to maintain business relationships that are

beneficial to the Properties or the conduct of the receivership; (iv) make repairs necessary to the maintenance of the Properties in order to preserve the Properties in the ordinary course of business; and (v) comply with all requirements and regulations applicable to the Properties; for the avoidance of doubt, each of the actions permitted pursuant to the foregoing subprovisions (i) through (v) is to be taken, or not taken, in the Receiver's sole and absolute discretion, and, without limitation of the foregoing, Borrowers, any property manager, and all those acting in active participation or concert with them who receive notice of this Order, and all those having claims against the Properties and any other property in Receiver's possession who receive notice of this Order are enjoined from, and shall not, terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Properties or any other property in Receiver's possession, require return or refund of any utility deposit, or otherwise interfere with the continued operations of the Properties or any other property in Receiver's possession; further, each utility company or entity providing service to the Properties shall forthwith transfer any deposits which it holds relating to the Properties to the exclusive control of Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance or satisfy obligations incurred prior to the date of this Order to maintain or secure such service;

xv. Receiver is directed to apply income from the Properties, subject to the lien and security interest rights of Plaintiff, as follows: (i) Receiver's approved fees and expenses; (ii) the current operating expenses of the Properties in the ordinary course of business; (iii) the obligations owed to Plaintiff under the Loan Documents; and (iv) such other obligations incurred;

xvi. Receiver is permitted to maintain sufficient cash on hand to enable Receiver to meet the expenses set forth in subparagraph (xv) above, the payment of which is authorized herein, in an amount to be agreed to between Receiver and Plaintiff; and

xvii. The authority granted to Receiver is self-executing.

45. In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall prepare and file in the record of the above-captioned case, no later than the twentieth (20th) day of each calendar month,

beginning in October 2014, each of the following with respect to the immediately preceding calendar month, certified by Receiver as true, correct, and complete:

    d.    a balance sheet and statement of cash flows for the Properties;

    b.    comparison of budgeted (by the Receiver) and actual income and expense statement for the Properties, including a detailed occupancy report for each of the Properties, setting forth the occupancy rates, average daily room rates and room revenues for each calendar month, and such other information as may customarily be reflected thereon, in detail reasonably satisfactory to Plaintiff;

    c.    an aged payables report and an aged receivables report for the Properties;

    d.    a capital expenditure report for the Properties; and

    e.    all bank statements with monthly reconciliations.

46.    Plaintiff and the Receiver are willing to post bonds in connection with appointment of a Receiver, as directed by the Court.

## VI.    CAUSE OF ACTION

A.    **BREACH OF CONTRACT AGAINST BORROWERS**

    (i)    <u>**Termination of Hotel Franchise Agreements**</u>

47.    Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

48.    Pursuant to Section 2.2 of the Mortgages, the termination of a Franchise Agreement that is not replaced with another Franchise Agreement acceptable to Plaintiff, shall, in Plaintiff's sole discretion, constitute an Event of Default under the Mortgage. The Franchise Agreements for the Norman Property and the Atoka Property were terminated by the franchisor, and have not been replaced with another Franchise Agreement acceptable to Plaintiff. Accordingly, Events of Default have occurred under the Mortgages, Borrowers have failed to

timely resolve the Events of Default, and Plaintiff has accelerated the maturity dates of the Notes.

49.    Because the Loan has been accelerated, pursuant to the terms of the Loan Documents, as of the date of this filing, the Indebtedness is at least $19,398.879, plus collection expenses and other charges, including default interest, that continue to accrue daily. As of the date of this filing, the Indebtedness remains unpaid.

50.    Consequently, Borrowers have breached the Loan Documents. Plaintiff has been damaged by Borrowers' breach of contract in an amount within the jurisdictional limits of this Court, and Plaintiff is thereby entitled to pursue all remedies available to Plaintiff, both under the Loan Documents and in law or in equity.

(ii)    **Waste on the Properties**

51.    Plaintiff incorporates by reference the allegations set forth above as if set forth fully herein.

52.    Pursuant to Section 2.1(m) of the Security Instruments, an Event of Default shall occur if the Property, or any part thereof, is subjected to actual or threatened waste so that the value of the Property is materially diminished thereby, and Plaintiff determines (in its subjective determination) that it is not adequately protected from any loss, damage or risk associated therewith.

53.    As noted above, there are significant material deferred maintenance issues at the Atoka Property, the Norman Property, and potentially all of the other Properties, and Plaintiff has determined that it is not adequately protected from any loss, damage or risk associated therewith.

54.    Consequently, Borrowers have breached the Loan Documents. Plaintiff has been damaged by Borrowers' breach of contract in an amount within the jurisdictional limits of this

Court, and Plaintiff is thereby entitled to pursue all remedies available to Plaintiff, both under the Loan Documents and in law or in equity.

## VII.    ATTORNEYS' FEES

55.    Plaintiff incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

56.    Because of Borrowers' actions, Plaintiff has found it necessary to engage the law firm of Thompson & Knight LLP to prosecute this action and to protect its rights.  Pursuant to Section 3.7 of each of the Security Instruments and Texas Civil Practice & Remedies Code Section 38.001, *et seq.*, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action.

## VIII.    CONDITIONS PRECEDENT

57.    Plaintiff has satisfied all conditions precedent for bringing this action.

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

58.    That the Court appoint Hospitality Receiver, LLC as Receiver to take temporary possession of the Property with responsibilities and authorities consistent with the Receiver's Powers as set forth herein and in accordance with the terms of the proposed order submitted with this Complaint; and

59.    On final trial hereof, Plaintiff have judgment against Borrowers for its actual damages as provided in the Loan Documents, and interest to the extent allowed by applicable law, together with its reasonable and necessary attorneys' fees and all costs of court, and such other amounts as provided for in the Loan Documents, and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

60.    That the Court grant any such other, further, or different relief to which Plaintiff may be entitled.

Dated this the 1st day of September 2014.

THOMPSON & KNIGHT, LLP


By:      /s/  Christopher L. Chauvin
         Christopher L. Chauvin
         Texas Bar No. 24045644
         christopher.chauvin@tklaw.com
         Matthew M. Mitzner
         Texas Bar No. 24068911
         matthew.mitzner@tklaw.com

         1722 Routh Street, Suite 1500
         Dallas, Texas 75201
         (214) 969-1700
         (214) 969-1751 (facsimile)

         ATTORNEYS FOR PLAINTIFF

## **VERIFICATION**

STATE OF TEXAS                          §
                                        §
COUNTY OF DALLAS                        §

BEFORE ME, the undersigned authority duly authorized to administer oaths, on this day personally appeared Peter K. Kofoed, in his capacity as a Servicing Officer for Special Servicer, which is the special servicer of the Loan for Plaintiff pursuant to that certain Pooling and Servicing Agreement dated September 1, 2005.

After being duly sworn by me, Peter K. Kofoed testified that (i) he is one of the custodians of the books, records, and files of the Plaintiff and Special Servicer that pertain to the Loans concerning the Properties; (ii) he has personally worked on the books, records, and files, and as to the facts set forth in the foregoing Plaintiff's Verified Original Complaint, and, except as to those facts directly attributed to Exhibits attached hereto or otherwise accredited; (iii) such facts set forth above are true and correct within his personal knowledge and/or knowledge derived from the business records of Plaintiff and Special Servicer. Mr. Kofoed further testified that:

- Exhibits 1-3 and subparts A-F thereto are true and correct copies of business records maintained in the ordinary course of business of Plaintiff and Special Servicer.

- Exhibit 4 is a true and correct copy of a letter, dated January 28, 2014, that Mr. Kofoed received from Premier on or about May 5, 2014;

- Exhibit 7 is a true and correct copy of a letter, dated July 10, 2014, that Mr. Kofoed received from Best Western International per the transmittal email, dated August 6, 2014, a true and correct copy of which is included in the Exhibit;

- Exhibit 8 is a true and correct copy of a letter, dated July 30, 2014, that Mr. Kofoed received from Premier per the transmittal email, dated August 19, 2014, a true and correct copy of which is included in the Exhibit;

- Exhibit 9 is a true and correct copy of the QA Assessment that Mr. Kofoed received from Best Western International in August 2014; and

- Exhibit 10 is a true and correct copy of the estimate prepared by Focus Management Group for the Norman Property at the behest of the Borrowers, which Mr. Kofoed received from Premier in or about August 5, 2014.



Peter K. Kofoed,
not in his individual or personal capacity, but solely
in his capacity as Servicing Officer for C-III Asset
Management LLC, a Delaware limited liability
company

SUBSCRIBED AND SWORN to before me on this ___ day of September, 2014 to certify

which witness my hand and official seal.

[SEAL]

TORRENCE AMOUR LAGOY
Notary Public, State of Texas
My Commission Expires
April 26, 2018

Notary Public, State of Texas